IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SAMANTHA JONES ELABANJO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11CV349 |
| | ) | |
| OFFICER JASON BELLEVANCE, | ) | |
| OFFICER BRANDON PERRY, | ) | |
| OFFICER TELFAIR, OFFICER WAGNER, | ) | |
| TOWN OF CHAPEL HILL, and CHAPEL | ) | |
| HILL POLICE DEPARTMENT, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This civil rights action is before the Court on a Motion for Summary Judgment [Doc. #73] filed by Defendants Bellevance, Perry, Telfair, and Wagner. This Court earlier recommended [Doc. #33], and the district judge has now ordered [Doc. #41], the dismissal of all of Plaintiff Elabanjo's claims in this action except Plaintiff's 42 U.S.C. § 1983 claims against Officers Bellevance, Perry, Telfair, and Wagner, in their individual capacities, for the alleged violations of Plaintiff's Fourth Amendment rights based on her claim of excessive force, and for the alleged violation of her First Amendment rights. Plaintiff Elabanjo, who is proceeding *pro se* in this action, has responded in opposition to Defendants' Motion for Summary Judgment. For the reasons set out below, the Court recommends that Defendants' Motion for Summary Judgment be granted and that this action be dismissed.

I.  FACTS, CLAIMS, AND PROCEDURAL HISTORY

This is a civil rights action filed pursuant to 42 U.S.C. § 1983. (Pl.'s Compl. [Doc. #2].) Plaintiff Samantha Elabanjo claims that her constitutional rights were violated by Chapel Hill, North Carolina, police officers on two separate occasions, one in 2008 and one in 2010.

The first incident occurred on May 8, 2008. (Compl. at 2.) Plaintiff alleges that her Fourth Amendment rights were violated when Officers Bellevance and Perry used excessive force against her in the course of arresting her for being drunk and disorderly in violation of N.C. Gen. Stat. § 14-444 (2011). (Compl. at 2; Magistrate's Order [Doc. #15-1] at 16.) She was convicted of the charged offense in district court. (Compl. at 2.) Plaintiff appealed to Superior Court and the court dismissed the case without leave to refile because the State could not prove that she was intoxicated. (Id.)

Defendant Bellevance has submitted an affidavit describing the events of May 8, 2008 [Doc. #73-1]. Defendant Bellevance and Defendant Perry arrested Plaintiff on that date. In his affidavit, Defendant Bellevance incorporates portions of Plaintiff's arrest report that he prepared at the time of the arrest. He states that on May 8, 2008, the police department received numerous calls reporting that two people were creating a disturbance in front of a restaurant known as "I Love NY Pizza" located in Chapel Hill. He and Officer Perry responded to the complaints. Employees of the restaurant pointed out the two people who were at the time walking across the street. The employees told the officers that the female of the two people was drunk and caused a problem in the restaurant by yelling through the door and making rude gestures at the employees. The female was also reportedly blocking the restaurant entrance

preventing customers from entering or leaving. The employees also said that the female said something about the employees being Muslim and that they needed to go back to where they came from.

Defendant Bellevance further states in his affidavit that he and Officer Perry approached the two people who had been identified, the female being Plaintiff Elabanjo. As soon as the officers exited their vehicle the two people yelled at the officers saying, "We ain't done nothing wrong." Two additional police officers arrived. While trying to ask the two people about the situation, they "just started cursing at us calling the white officers crackers and calling Officer Perry a wanna be white cop." (Aff. [Doc. #73-1] at 3.) Defendant Bellevance states that he could smell alcohol coming from both of them "but especially the black female." (Id.) The officers warned the two people that they needed to leave the area and not to go back to the pizza restaurant. The two people started to walk away but then turned around as if they were going to go back to the pizza restaurant. They yelled at the officers that they could go wherever they wanted to go because it was a free country. Defendant Bellevance and Defendant Perry went back to the pizza restaurant to talk to the employees. Plaintiff Elabanjo then started to walk toward the officers yelling. She stopped in the middle of the street and held up her hand as if she was directing traffic making all the cars stop. Cars in each travel lane of the street stopped because of Plaintiff. She walked back to the sidewalk and Defendants arrested her for disorderly conduct by impeding traffic. Defendant Bellevance states that Plaintiff acted at all times in an agitated and disruptive manner.

3

Defendant Bellevance further states that they transported Plaintiff to the police station where she was taken before a magistrate and a warrant was issued for her arrest. While en route to the station and at the station (including the time spent in front of the magistrate), Plaintiff was acting in a disruptive and hostile manner toward Defendant Bellevance and Officer Brandon. Because Plaintiff refused to give the officers her name, in the warrant she was identified as Jane Doe. They later obtained her name from personnel at the Orange County Jail.

After the arrest warrant was issued, Defendants transported Plaintiff to the jail in their vehicle. Enroute to the jail Plaintiff continued to act in a disruptive, aggressive, and hostile manner toward Defendants. Plaintiff while in the patrol car shouted at the officer, called Defendant Perry names, and spit in the vehicle. When they arrived at the jail, Plaintiff refused to get out of the back seat of the patrol car. Defendants had to pull her out of the car which was made more difficult because of Plaintiff's agitated state and her being overweight. She was 5 feet 7 inches tall and 236 pounds. After taking Plaintiff out of the patrol car, she continued to refuse to cooperate with Defendants. She was very agitated and angry. Plaintiff attempted to spit on Defendant Perry. To avoid being spit upon, Defendant Perry "spun Plaintiff around which caused her to briefly go to the ground." (Id. at 4.) Defendants helped Plaintiff get up, and then brought her into the jail. Defendant Bellevance states that the force used against Plaintiff on May 8 was in accordance with the department's use-of-force policy and North Carolina law. The force used against Plaintiff according to Defendants consisted of their presence, verbal orders, handcuffs, and their hands to remove Plaintiff from the patrol car. No weapons were used against her, and she was not tased nor pepper sprayed. Plaintiff filed a complaint against

4

Defendants with the police department, but they were cleared of any wrongdoing after an investigation. Defendants were not disciplined as a result of Plaintiff's complaint.

Defendant Bellevance says that he has encountered Plaintiff while on duty several times since this incident. He states that where possible he has allowed other officers assist so as to avoid any situations with Plaintiff.

Defendant Perry has also submitted an affidavit [Doc. #73-11]. He states that he was involved in Plaintiff's May 8, 2008 arrest, but not her 2010 arrest. He describes responding to the call at the pizza restaurant where they found Plaintiff acting in an intoxicated manner and impeding traffic. While being transported to the jail, Defendant Perry states that Plaintiff continued to act in a disruptive, aggressive, and hostile manner toward Defendants. He says that Plaintiff spit in the car and on the petition which separates the back from the front seat of the patrol car. When they arrived at the jail, Defendant Perry says that Plaintiff refused to get out of the car. Defendants had to pull her out of the car after which Plaintiff continued to resist their orders. He says that Plaintiff tried to spit on him, and, to avoid being spit upon, he put his hands on Plaintiff's shoulders and spun her around which caused her to briefly go to the ground. Defendant Perry includes the narrative portion of his police report describing the events of May 8 in a manner similar to what he states in his affidavit.

Plaintiff Elabanjo has submitted an affidavit describing her May 2008 arrest [Doc. #78-1]. She states that she was not drunk on May 8th. She says that Defendant Bellevance pulled her out of the patrol car "backwards" and that she "hit but first." (Id. at 1.) Plaintiff denies that she spit on a barrier in the patrol car or tried to spit upon Defendant Perry. She says that after

being pulled from the patrol car, Defendant Perry pushed her and she "hit head first." Defendant Perry then allegedly picked her up "and twisted [her] wrist which turned to be sprained from torn ligaments. Took x rays and UNC hospital diagnosed this." (Id. at 2.)

Plaintiff's version of the events of May 8 does not differ from those of Defendants Bellevance and Perry in most respects. She does not deny the bulk of the disruptive conduct described by Defendants including impeding traffic, being loud, cursing, calling them names, refusing to cooperate, refusing to get out of the patrol car, and refusing to give her name to the officers or the magistrate. Although Plaintiff denies being drunk, she does not deny that she had been drinking or that she smelled of alcohol.

The second incident occurred on February 15, 2010.[1] Officer Bellevance describes what happened on this date in his affidavit as well. He says that on that day, he was driving a patrol car in which Defendants Telfair and Wagner were passengers. They passed a bus stop on Columbia Street and heard someone yelling and screaming. Defendant Bellevance thought that someone might be hurt, in trouble or in danger. At that time, he did not know the identity of the person who was yelling, although it turned out to be Plaintiff Elabanjo. Defendant Bellevance states that upon hearing the yelling, he looked in his rear view mirror and saw someone standing in the street and yelling in their direction. He decided to back up and return to the bus stop and then realized that it was Plaintiff Elabanjo that was yelling at them. Plaintiff was agitated and causing a disturbance. The officers asked Plaintiff repeatedly to stop shouting and calm down. Other individuals, including children, were in the area. The officers tried to

---

[1] Plaintiff alleges the date was February 10 at one point and February 15 at another, but her charging documents reflect the date of February 15, 2010.

leave the scene after attempting to calm Plaintiff down, but as they drove off Plaintiff starting yelling again and continued to cause a disturbance. Plaintiff used profanity, told the officers to wash their "damn dirty car," and called them assholes. (Id. at 7.) The officers then arrested Plaintiff for disorderly conduct at a terminal and using profane language on a highway. Officer Bellevance states that Plaintiff was not arrested because she had complained about her 2008 arrest. The previous arrest did not result in any disciplinary action against Defendants, and Defendant Bellevance says that he had encountered Plaintiff on other occasions and had not arrested her. The two officers with Defendant Bellevance on February 15 were not involved in Plaintiff's 2008 arrest and had no reason to retaliate against Plaintiff by arresting her. A video of Plaintiff's processing at the police station is part of the record.

Defendant Telfair submitted an affidavit [Doc. #73-12] which is consistent with Defendant Bellevance's version of the events on February 15. Defendant Wagner also submitted an affidavit [Doc. #73-13] which is consistent with Defendant Bellevance's version of the events on February 15.

Plaintiff addresses her February 15 arrest in her affidavit [Doc. #78-1] as well. She states that she was talking to someone else and not the officers until their car backed up to the bus stop. She says that the Defendants did not arrest her when she said "damn," but only when she called them assholes. She also admits to saying to Defendant Bellevance, "Why don't you leave me alone and go wash your damn dirty car?" Therefore, Plaintiff's version of events does not differ significantly from the Defendants' version.

Plaintiff seeks unspecified relief for the alleged Fourth Amendment violation. (Compl. [Doc. #2] at 6.) For the alleged First Amendment violation, Plaintiff seeks $450,000 in damages and an injunction barring Defendants Bellevance and Perry from ever arresting her again. (Id.)

Defendants argue that as to both incidents summary judgment should be granted in their favor based upon qualified immunity.

II. DISCUSSION

    A. Summary Judgment Standard

Summary judgment is appropriate when no genuine issue of material fact exists. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in a light most favorable to the non-moving party. Id. The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." (Id. at 718-19 (citing Anderson, 477 U.S. at 247-48).) A mere scintilla of evidence supporting the non-moving party's case is insufficient to defeat a motion for summary judgment. See, e.g., Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); see also Anderson, 477 U.S. at 248 (non-moving party may not rest upon mere allegations or denials.)

B.  Qualified Immunity on Fourth Amendment Claim

Plaintiff claims that Defendants Bellevance and Perry used excessive force against her when they arrested her on May 8, 2008, in violation of her Fourth Amendment right to be free from unreasonable searches and seizures. Defendants claim qualified immunity, which shields government officials from money damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A court must answer two questions to determine if a government official is entitled to qualified immunity. Pearson v. Callahan, 555 U.S. 223, 232 (2009); Doe ex rel. Johnson v. S. C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010). The first question is whether the facts that a plaintiff has shown make out a violation of a constitutional right. Pearson, 555 U.S. at 232. The second is whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. Id. The court may address first either of these two prongs of the qualified immunity analysis given the facts of the case at hand. Id. at 236. Defendants argue that their conduct was reasonable, and not in violation of the Fourth Amendment.

Addressing the first prong of the analysis, the question of whether a police officer has used excessive force is analyzed under a standard of objective reasonableness, and the court does not consider the officer's underlying intent or motivation. Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011). The question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force. See Elliot v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996).

Based upon Plaintiff's affidavit, it appears that the actions occurring on May 8 that Plaintiff contends were unreasonable were Defendant Bellevance pulling her from the patrol car at the jail and Defendant Perry pushing her, picking her up, and twisting her wrist as they walked from the car to the jail. First, the Court finds that based upon Plaintiff's actions at or near the pizza restaurant and Defendant Bellevance's observations and impressions, a reasonable officer could have reasonably believed that Plaintiff was intoxicated at the time. Plaintiff states that she was not drunk, however a reasonable officer could have reasonably believed that she was, even if that was a mistaken belief.

In addition, Plaintiff refused to get out of the patrol car when the officers arrived at the jail. The officers were thus allowed to use reasonable force to get Plaintiff out of the car and into the jail. See Graham v. Connor, 490 U.S. 386, 396 (1989) (right to make arrest carries with it the right to use some degree of physical coercion to effect it). Plaintiff has not identified any lesser amount of force that would have been successful in getting her out of the patrol car other than what the officers used, namely grabbing onto her and pulling her out of the car. A reasonable officer in the same circumstances would have believed that he could pull Plaintiff from the vehicle. Therefore, Defendant Bellevance did not use excessive force against Plaintiff by pulling her out of the patrol car. See Henry, 652 F.3d at 531; Elliott, 99 F.3d at 642.

With regard to Defendant Perry pushing Plaintiff, Defendant Perry claims that he spun Plaintiff around to get her mouth away from him because she tried to spit at him, Plaintiff fell, and she hit her head. Although Plaintiff denies that she tried to spit on Defendant Perry, it is not disputed that at the time Plaintiff was agitated and angry, refusing to cooperate with the

officers, and shouting at them. (Bellevance Aff. [Doc. #73-1] at 4.) This is after both Defendants Perry and Bellevance believed, even if mistakenly, that Plaintiff had spit while in the patrol car. Under these circumstances, the Court does not find that Defendant Perry's spinning Plaintiff around or pushing her as they are walking toward the jail constitutes excessive force. See Brown v. Gilmore, 278 F.3d 362, 369 (4th Cir. 2002) ("If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." (internal quotation omitted)). Given the entire course of events that occurred on May 8, a reasonable officer could have concluded that Defendant Perry's minimal actions were justified to prevent being spit upon. Plaintiff complains that when Defendant Perry picked her up, he twisted her wrist which resulted in a sprain. As stated above, the right to arrest Plaintiff brought with it the right to use some physical coercion to effect the arrest and get Plaintiff into the jail. See Graham, 490 U.S. at 396. It was certainly reasonable for Defendant Perry to get Plaintiff up from the floor when she fell. Whether this twisting of Plaintiff's wrist accidentally occurred as part of that process or was a consequence of Defendant Perry attempting to control Plaintiff and overcome her disruptive conduct, it did not result in a Fourth Amendment violation. A reasonable officer in Defendant Perry's situation could have believed that twisting Plaintiff's wrist was justified and necessary to get Plaintiff into the jail.

  For these reasons, Plaintiff's claim of excessive force based upon Defendants' actions on May 8, 2008, should be dismissed.

C.  Qualified Immunity on First Amendment Claim

Plaintiff Elabanjo also claims that Defendants Bellevance, Telfair, and Wagner violated her First Amendment rights when they arrested her on February 15, 2010. To establish a section 1983 First Amendment retaliation claim, Plaintiff must prove that: (1) she was engaged in constitutionally protected speech; (2) the defendant's allegedly retaliatory action adversely affected the plaintiff's constitutionally protected speech; and (3) a causal relationship exists between Plaintiff's speech and the defendant's retaliatory action. Blankenship v. Manchin, 471 F.3d 523, 528 (4th Cir. 2006); Swick v. Wilde, No. 1:10-cv-303, 2012 WL 3780350, at *17 (M.D.N.C. Aug. 31, 2012).

In addition, there is also an issue as to whether a plaintiff must plead and prove a lack of probable cause for the underlying charge. In Reichle v. Howards, 132 S. Ct. 2088 (2012), the Court considered a First Amendment retaliatory arrest claim, and concluded that qualified immunity would apply in that case because probable cause existed to support the arrest. On this issue, the Supreme Court in Howards held that even if there were a First Amendment right to be free from retaliatory arrest where the arrest was otherwise supported by probable cause, that right was not clearly established for qualified immunity purposes. Howards, 132 S. Ct. at 2093 ("This Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause; nor was such a right otherwise clearly established at the time of Howards' arrest."); see also Swick, 2012 WL 3780350, at n.26 (noting, but not resolving, the issue of whether a plaintiff must also prove a lack of probable cause for the underlying charge (citing Hartman v. Moore, 547 U.S. 250, 265-66 (2006))).

12

In this case, it is not disputed that Plaintiff Elabanjo was convicted in state district court on one of the charges she was arrested for on February 15, 2010. (Compl. at 5 (admitting that the district court convicted her of profane language on a highway, but stating that charge was dismissed in superior court); Bellevance Aff. [Doc. #73-1] at 8; state court Judgment [Doc. #73-10].) The general rule is that this conviction, even though it was later overturned on appeal, conclusively establishes probable cause for the arrest. Hoover v. McDowell Cnty., 155 F.3d 559, 1998 WL 398825, at 3 (4th Cir. 1998) (unpublished) ("Hoover was convicted . . . in state district court but later acquitted in superior court. His conviction in district court, however, establishes the existence of probable cause" because North Carolina follows "the majority rule that 'absent a showing that the conviction in District Court was procured by fraud or other unfair means, the conviction conclusively establishes the existence of probable cause, even though the plaintiff was acquitted in Superior Court'" (quoting Myrick v. Cooley, 91 N.C. App. 209, 371 S.E.2d 492, 495 (1988)); see also Elkins v. Broome, 328 F. Supp. 2d 596, 598-600 (M.D.N.C. 2004); Falkner v. Almon, 22 N.C. App. 643, 207 S.E.2d 388, 389 (1974).

The only possible exception to this general rule is if the statute pursuant to which Plaintiff was arrested was "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." Michigan v. DeFillippo, 443 U.S. 31, 38 (1979). The North Carolina statute at issue is N.C. Gen. Stat. § 14-197. It reads in relevant part:

> If any person shall, on any public road or highway and in the hearing of two or more persons, in a loud and boisterous manner, use indecent or profane language, he shall be guilty of a Class 3 misdemeanor.

N.C. Gen. Stat. § 14-197.  In Harrison v. Deane, 426 F. App'x 175 (4th Cir. 2011), the court found that a Virginia statute which provided that if any person "profanely curses or swears or is intoxicated in public . . . he shall be deemed guilty of a Class 4 misdemeanor" was not so grossly or flagrantly unconstitutional that the police officer should have recognized its invalidity. Harrison, 426 F. App'x at 176-81.  The court noted that "courts have consistently recognized that police officers may rely on the presumptive validity of statutes." Id. at 180-81 (citing cases). Neither party has cited authority showing that the North Carolina statute had been declared unconstitutional prior to the decision of the superior court in Plaintiff's case.[2] Accordingly, Defendants were entitled to rely on the presumptive validity of the North Carolina statute, and Plaintiff's arrest was supported by probable cause.

Because in 2010 (when Plaintiff was arrested) it was not clearly established in this jurisdiction that Plaintiff could make out a First Amendment retaliation claim when probable cause supported her arrest, and probable cause did support Plaintiff's arrest, Defendants are entitled to qualified immunity on Plaintiff's First Amendment claim for her February 2010 arrest.

D. Plaintiff's Request for Injunctive Relief

Plaintiff seeks as part of her relief an injunction barring Defendants Bellevance and Perry from ever arresting her again.  (Compl. at 6.)  Qualified immunity protects against damages, but

---

[2] The statute was examined in United States v. Flowers, No. 2:06CR30, 2007 WL 3355374 (W.D.N.C. Nov. 8, 2007), but the Court found the statute to be constitutional after adopting the state's proffered limited construction of the statute so that it reached only instances where a defendant has used so-called "fighting words," those words which by their very utterance inflict injury or tend to incite an immediate breach of the peace.  Such a decision of that court, even if the court had found the statute to be unconstitutional, is not one that a reasonable officer in this District is held to have knowledge of for purposes of determining whether the right was clearly established.  See Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999) (courts in this circuit ordinarily need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest state court of the state in which the case arose in determining whether a right was clearly established).

14

usually not against injunctive relief. See Harlow, 457 U.S. at 818. However, a plaintiff must nevertheless establish standing for injunctive relief, which requires a showing of a real or immediate threat that the plaintiff will be wronged again. See Los Angeles v. Lyons, 461 U.S. 95, 111-12 (1983) ("We decline the invitation to slight the preconditions for equitable relief; for as we have held, recognition of the need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers engaged in the administration of the states' criminal laws in the absence of irreparable injury which is both great and immediate."); Phillips v. Peddle, 7 F. App'x 175, 180-81 (4th Cir. Mar. 16, 2001) (affirming district court's denial of an injunction against police officer from entering plaintiff's home absent a warrant or exigent circumstances due to a lack of standing; mere fact that plaintiff alleges that his rights were violated once does not establish any likelihood of a recurrence). In the present action, Plaintiff has failed to set forth any compelling reason for injunctive relief and does not suggest that the situations complained of would occur again. Therefore, Plaintiff's request for injunctive relief should be denied based upon a lack of standing.

III.     CONCLUSION

IT IS THEREFORE RECOMMENDED that Defendants' Motion for Summary Judgment [Doc. #73] be granted, and that this action be dismissed.

This, the 21st day of January, 2014.

                                                             /s/ Joi Elizabeth Peake
                                                            United States Magistrate Judge